NOTICE

Decision filed 10/07/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200266-U

NO. 5-20-0266

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 10-CF-418 |
| | ) | |
| TRAVARIS M. ROWELL, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justice Wharton concurred in the judgment.
Justice Barberis specially concurred.

**ORDER**

¶ 1   *Held*:   Following a third stage evidentiary hearing, the circuit court did not err in denying the defendant's postconviction petition where the defendant did not demonstrate by a preponderance of the evidence that plea counsel provided ineffective assistance for failure to transmit the defendant's acceptance of a plea offer.

¶ 2   The defendant, Travaris M. Rowell, appeals from the circuit court's denial of his petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)), after a third stage evidentiary hearing. The defendant argues on appeal that his plea counsel provided ineffective assistance by allowing an eight-year plea offer to lapse after the defendant allegedly accepted the offer. We affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      This is the second time the defendant's postconviction petition has been considered by this court. Previously, we remanded the case for a third stage evidentiary hearing on the issue of whether plea counsel was ineffective for failing to timely communicate the defendant's acceptance of the State's initial plea offer. See *People v. Rowell*, 2018 IL App (5th) 150010-U. The history of the case was set forth in detail in our prior order. Therefore, we provide only those facts necessary to this disposition.

¶ 5      On August 5, 2010, the defendant, Travaris M. Rowell, and his codefendant were charged with three counts of unlawful delivery of a controlled substance under section 401(c)(2) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(2) (West 2010)) and one count of unlawful possession of a controlled substance with the intent to deliver 400 to 900 grams of a substance containing cocaine under section 401(a)(2)(C) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(2)(C) (West 2010)).

¶ 6      A public defender was initially appointed to represent the defendant. The defendant preferred to hire private counsel and retained Mark Costa to negotiate a plea agreement.

¶ 7      On October 9, 2012, the defendant appeared for a pretrial hearing. The defendant alleges that on that date he met with Costa outside of the courtroom to discuss a plea offer form from the State. The defendant's girlfriend, Lisa McCoy, was present for the discussion. At that meeting, the defendant claims that Costa indicated the State had offered eight years in the Department of Corrections in exchange for the defendant pleading guilty. The defendant indicates he accepted the offer.

¶ 8      On December 17, 2012, the circuit court held a negotiated plea hearing. The State informed the court that the defendant agreed to plead guilty to count II, unlawful possession with the intent

to deliver a controlled substance containing cocaine. Count II was a Class X felony with a minimum sentence of 12 years and maximum sentence of 50 years in the Illinois Department of Corrections. After the court reviewed the plea of guilty form, the court asked the defendant if he had read the document and if he had questions. The defendant indicated that he had read the form and did not have questions. The defendant then stated, "I'm looking at 15 years to life, so 15 years, I would accept it if that's the offer." The State then provided a factual basis, and the parties waived the preparation of a presentence investigation. The State explained that the defendant agreed to a 15-year sentence to be served at 75%, along with a 3-year period of mandatory supervised release. In exchange for his plea of guilty, the three additional counts alleging unlawful delivery were dismissed. The court accepted the defendant's plea of guilty and informed the defendant that he had 30 days to file a motion for leave to withdraw the guilty plea. Any issue not raised in the motion for leave to withdraw the guilty plea would be deemed waived. The court further informed the defendant that he had the right to appeal the court's decision.

¶ 9      On January 11, 2013, the defendant filed a *pro se* motion for a reduction of his sentence. The defendant claimed that on December 17, 2012, he was under the influence of drugs and alcohol, and he misunderstood the terms of the plea. The defendant also claimed multiple mitigating factors that the court should have considered in reducing the sentence. The defendant did not mention the eight-year plea offer. He did not request to vacate his guilty plea. Without holding a hearing, the court denied the motion for reduction of sentence. The defendant did not appeal his conviction or sentence.

¶ 10      On September 23, 2013, the defendant filed a *pro se* postconviction petition seeking to vacate his guilty plea. The defendant's petition contained four claims: that his plea was made involuntarily and without full knowledge of the consequences; that the circuit court failed to

3

properly admonish the defendant of the consequences of the plea and the maximum sentence permitted; that Costa was ineffective for allowing the defendant to sign a plea agreement "erroneously waiving his constitutional rights"; and that Costa was ineffective for failing to communicate the defendant's acceptance of a more favorable plea agreement while allowing the prosecution's offer to lapse. The defendant attached an affidavit dated September 16, 2013, where he attested that Costa had informed him that the State had offered to reduce the charge if the defendant served eight years in the Department of Corrections. The defendant attested that he directed Costa to accept the eight-year offer. The defendant further attested that on December 17, 2013, Costa informed the defendant that the State was no longer offering a plea deal of eight years.

¶ 11 Christian Baril was appointed to represent the defendant as postconviction counsel. On October 31, 2014, Baril filed an amended postconviction petition. The amended petition contained the claim from the defendant's *pro se* petition that Costa failed to provide reasonable assistance by allowing the prosecution's eight-year plea offer to lapse. The amended petition additionally claimed that the defendant did not enter his plea voluntarily because he was not able to understand the plea of guilty form due to his diminished mental capacity and because he received misinformation from plea counsel that day-for-day credit would be received while serving his sentence. Baril attached the defendant's September 16, 2013, affidavit to the amended postconviction petition.

¶ 12 The State did not file a motion to dismiss or an answer to the amended postconviction petition. On January 2, 2015, the cause proceeded to an evidentiary hearing. Baril did not present any evidence or argument regarding the circumstances related to the eight-year plea offer. Following the hearing, the court denied the defendant's request for postconviction relief.

¶ 13     The defendant appealed the issue of whether postconviction counsel, Baril, provided reasonable assistance of counsel. On appeal, the State conceded that Baril did not render reasonable assistance where he failed to argue and seek a ruling on the issue of whether the defendant's plea counsel failed to timely convey the defendant's acceptance of the State's alleged eight-year plea offer.[1] This court reversed the circuit court's order denying the defendant's postconviction petition. We remanded for a third stage evidentiary hearing on the sole issue of whether plea counsel failed to timely communicate the defendant's acceptance of the State's alleged plea offer. *Rowell*, 2018 IL App (5th) 150010-U.

¶ 14     On remand, the defendant was appointed new postconviction counsel, Timothy Ting. A new prosecutor was assigned to the case because Mark Hamrock, the prior prosecutor, had retired.

¶ 15     During a status conference on February 28, 2019, Ting requested an extension of time. Ting advised the court that his efforts to locate Costa had, thus far, been unsuccessful. The State did not object to a continuance, as it was also having a difficult time locating its file.

¶ 16     The third stage evidentiary hearing was held on November 21, 2019. At the start of the hearing, Ting advised the court that he had made several attempts to subpoena Costa, and that his last attempt was made on October 23, 2019. Ting stated that he had also contacted the codefendant's attorney in an attempt to review the codefendant's file. The codefendant's counsel could not locate her case file. Nevertheless, Ting advised the court he was ready to proceed and stated,

> "Your Honor, I've spoke with Mr. Rowell several times within the department of corrections regarding his contentions with this particular issue, and I believe we are as prepared as we can be to adjudicate the issue at this time."

---

[1]Notably, in the first appeal, the State made no argument regarding the issue of waiver.

¶ 17    The State informed the court that it was also ready to proceed with the evidentiary hearing. The State additionally advised,

> "I would also note for this Court that the People have attempted to locate the, the file as well in our office to no avail. We have searched high and low throughout the State's Attorney's Office, throughout the basement in this matter. However, the file for either Mr. Rowell and [the codefendant] can't be located at this time, but we do have witnesses here."

¶ 18    The defendant proceeded to call his witnesses. Lisa McCoy, the defendant's fiancée, stated she was present for the defendant's October 9, 2012, court appearance. McCoy testified that she heard Costa inform the defendant that the State had agreed to offer an eight-year sentence in exchange for a plea of guilty. McCoy recalled the defendant's response to the eight-year plea offer as, "if that's the best you can do, I accept." According to McCoy, Costa did not indicate there was a time limitation on the offer. During cross-examination, McCoy testified that she could not recall the discussion on which count the offer was made. She was unaware if the charges against the defendant would be amended. McCoy testified that she believed the defendant received a 15-year offer prior to the 8-year offer. Costa did not show her a written offer. She did not know whether Costa had presented the defendant with a written offer. She also did not know whether Costa had communicated the acceptance of the eight-year offer to the state's attorney. She testified that after the October 9, 2012, court appearance, she went to Costa's office, and they only discussed attorney fees. McCoy testified that she had called Costa's office about the offer after the court date and Costa did not return her call.

¶ 19    The defendant also called Mark Hamrock, the former prosecutor assigned to the case. Hamrock testified that he could not recall any specifics about the plea negotiations in the defendant's case. He explained that he had "handled thousands of files" after the defendant's case. Hamrock also testified that written offers were normally given a deadline of either 24 or 48 hours prior to the pretrial hearing, but "that wasn't a hard and fast rule." With regard to the plea offer

alleged by the defendant, Hamrock was asked, "Now, as to your recollection, do you remember making an eight-year offer in that particular case?" Hamrock responded, "I do not." Hamrock was also asked if he remembered any specifics regarding negotiations with Costa. Hamrock answered:

> "I do not. The only, the only thing I will say is I know that at one point I made a 15-year offer, but I only remember that or know that because I reviewed the transcript of the plea hearing in this case. So, I know that at some time I made an offer for 15 years.
>
> When this matter first came to my attention, I contacted Mr. Suthard[2] to see if he had my old file so that I could look at my notes to see what offers had been made but the offers I had made were typically in writing and any amendments or changes or alterations would have been noted in the file.
>
> However, as has been stated on the record, the file can't be located; so, I could not look at it. So, I don't have any independent recollection. It's been nine years."

Hamrock agreed that an eight-year offer could have been made for a case of this nature. He then conceded that it would have been possible that he had made an eight-year offer in this case. Hamrock testified that if such an offer had been made, and a defense attorney had accepted the offer, Hamrock would have honored the agreement. Hamrock additionally testified that when an agreement was made between the parties on a negotiated plea, "it would be very close to 100 percent that [the circuit court] would have accepted that [plea deal]." Hamrock believed that he spoke to Baril about the case before the initial postconviction evidentiary hearing but did not remember their conversation.

¶ 20    The defendant was the final witness called in support of his petition. The defendant recalled that he hired Costa to negotiate a plea in his case. On October 9, 2012, Costa met with the defendant outside of the courtroom to discuss an offer made by the State. Costa told the defendant that the State had offered a plea to eight years in the Department of Corrections. The defendant questioned Costa about the eight-year offer. Costa indicated that the offer would be the best offer that the

---

[2]After Hamrock retired, Mr. Suthard was the prosecutor assigned to this case.

defendant would receive. The defendant responded, "if that's the best you can do, yes." The defendant was led to believe that the eight-year offer was going to be accepted on the next court date. While the defendant was waiting for the next court date, he was told by his codefendant that the State had increased the terms of the plea offer. The defendant testified that he called Costa several times between October 9, 2012, and the December 17, 2012, hearing date to discuss his codefendant's statement, but could not reach Costa.

¶ 21    On the December 17, 2012, hearing date, the defendant asked Costa about the eight-year offer. Costa told the defendant that the State had increased its offer to 15 years because the defendant had not accepted the 8-year offer. When the defendant was questioned by the State about the validity of the eight-year offer, the defendant stated, "[Costa] led me to believe something that was never there, I guess. I don't know." On redirect examination, the defendant testified that from his knowledge, he was offered an eight-year plea deal.

¶ 22    The defendant also testified to Baril's level of assistance during the evidentiary hearing on his postconviction petition. According to the defendant, Baril did not discuss the strategy for the evidentiary hearing. Baril failed to inform the defendant that he was not going to address the issue of ineffective assistance of counsel regarding the eight-year plea offer. According to the defendant, Baril had not attempted to subpoena Costa to testify, although the defendant had asked Baril to do so.

¶ 23    Following the close of the defendant's testimony, the State presented its evidence. Baril was the State's only witness. Because of attorney-client privilege, Baril did not answer questions that involved discussions with the defendant. Baril testified that he had a difficult time remembering the case because of a traumatic event that had occurred in his personal life during the time he represented the defendant. Baril believed that before the first evidentiary hearing,

Hamrock indicated that he had not made an eight-year offer to the defendant. Baril admitted, however, that his testimony was "very speculative" regarding what had occurred five years prior when he was working on this case.

¶ 24 After the conclusion of the testimony, postconviction counsel, Ting, asked the court to take judicial notice of Costa's status as an attorney under the Illinois Attorney Registration and Disciplinary Commission.[3] Ting argued that the defendant's testimony was uncontradicted because the State's file could not be located, Costa could not be found, and the codefendant's attorney no longer had her case file. Ting further argued that the defendant and McCoy had testified, under oath, that an eight-year offer had been made. He concluded that sufficient evidence was offered through testimony to demonstrate a substantial denial of a Constitutional right by a preponderance of the evidence. The defendant requested that the court allow the defendant to withdraw his guilty plea or reconsider the defendant's sentence.

¶ 25 The State argued that the defendant did not meet his burden of proof because he could not show that the State had made an eight-year offer. The State claimed that the testimony that the defendant was "led to believe" there was an eight-year offer by Costa did not prove that an offer was actually made. Although McCoy testified that there were "eight years on the table," she could not remember anything else about the conversation.

¶ 26 Ting responded that there was clear evidence of an eight-year offer through the testimony of two individuals. The State had possession of the file, and the exclusive ability to review it, but could not locate it. In sum, Ting argued that State failed to produce any reliable evidence to rebut the defendant's evidence as to the eight-year plea offer.

---

[3]*In the Matter of Mark W. Costa*, No. 6224716, Supreme Court No. M.R. 27466 (Sept. 21, 2015), Costa was suspended from practicing law for failing to diligently represent two clients. Costa had converted costs from those clients, and he made misrepresentations to one of those clients.

¶ 27 At the close of the evidence and arguments, the court issued its ruling. The court stated as follows:

> "The motion is going to be denied. The Court cannot find that he was denied ineffective assistance of counsel due to failure to timely communicate an acceptance of a plea offer in this case. Based upon the testimony, it's not—Well, the testimony speaks for itself. Mr. Hamrock doesn't remember making that offer. Mr. Rowell testified that the offer was made. Miss McCoy testifies the same. The Court's considered it all."

¶ 28 On February 11, 2020, the court heard the defendant's motion to reconsider. Ting argued that the State's missing file and Hamrock's inability to recall the plea negotiations should not be held against the defendant. Ting claimed there was a substantial showing of a significant deprivation of Constitutional rights sufficient to satisfy the defendant's burden of proof in a third stage postconviction hearing. In response, the State argued that the circuit court had judged the credibility of the witness testimony and the testimony did not show a deprivation of the defendant's rights. The State requested that the court deny the defendant's motion to reconsider. The circuit court considered the arguments of counsel and denied the motion. This appeal followed.

¶ 29                                    II. ANALYSIS

¶ 30 On appeal, the defendant claims that he proved, by a preponderance of the evidence, that plea counsel, Costa, provided ineffective assistance by failing to timely communicate the acceptance of the eight-year plea offer. Before addressing the defendant's claim on the merits, we consider the State's claim of waiver.

¶ 31 The State argues that the defendant waived his postconviction claim of ineffective assistance of plea counsel because he failed to move to withdraw his guilty plea pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). Rule 604(d) requires the defendant to file a motion

10

to vacate the guilty plea to preserve the issue.[4] Under the Post-Conviction Hearing Act, the State was required to file either an answer or motion to dismiss within 30 days from the date of the order allowing the second stage proceeding. 725 ILCS 5/122-5 (West 2012). "By its answer, a party either admits or denies the allegations contained in the complaint, thereby framing the issues to be resolved later by litigation[;] [a] motion to dismiss, on the other hand, attacks the sufficiency of the complaint." (Internal quotation marks omitted.) *People v. Thompson*, 2016 IL App (3d) 140586, ¶ 25. The State may forfeit a claim of waiver by failing to raise the issue before the circuit court. *People v. Bahena*, 2020 IL App (1st) 180197, ¶ 29. Additionally, "where a question was open to consideration in a prior appeal and it could have been presented but was not, the question will be deemed to be waived." *Turner v. Commonwealth Edison Co*., 63 Ill. App. 3d 693, 698 (1978). A second appeal addresses issues in the proceedings after remand. *People v. Thornton*, 85 Ill. App. 3d 325, 332 (1980).

¶ 32     Here, during the second stage of the proceeding, the State did not file a motion to dismiss the amended postconviction petition asserting that the defendant had waived his claim of ineffective assistance of plea counsel. In addition, the State did not raise the issue of waiver in the first postconviction appeal. In fact, the State conceded that postconviction counsel did not render reasonable assistance by failing to argue the merits of the issue. *Rowell*, 2018 IL App (5th) 150010-U. We accepted the State's confession of error and remanded for a third stage evidentiary hearing. Therefore, we reject the State's contention of waiver. Furthermore, "[w]aiver is a limitation on the parties and not on the court." *People v. Miranda*, 329 Ill. App. 3d 837, 844 (2002). The strict application of the waiver rule will be relaxed in postconviction proceedings where "fundamental

---

[4]In its brief, the State uses the terms "waiver" and "forfeiture" interchangeably. Its argument, however, is based on the waiver doctrine.

fairness so requires." (Internal quotation marks omitted.) *Miranda*, 329 Ill. App. 3d at 843. Given our previous disposition and our order granting the defendant a third stage evidentiary hearing, fundamental fairness requires that we proceed with a review on the merits.

¶ 33    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2012)) provides a three-step process to resolve a criminal defendant's conviction or sentence that resulted from a violation of rights protected under the state or federal constitution. *People v. York*, 2016 IL App (5th) 130579, ¶ 15. "At the first stage of postconviction proceedings, the court reviews the petition to determine whether it is frivolous and patently without merit." *York*, 2016 IL App (5th) 130579, ¶ 15. The defendant must make a "substantial showing of a constitutional violation" at the second stage. (Internal quotation marks omitted.) *York*, 2016 IL App (5th) 130579, ¶ 16. Then, if the petition advances to the third stage, the court will hold an evidentiary hearing on the defendant's claims. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 27. The petitioner has the burden to show a substantial denial of a constitutional right by a preponderance of the evidence during the third stage. *People v. Coleman*, 2013 IL 113307, ¶ 92.

¶ 34    Claims raising ineffective assistance of counsel present mixed questions of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We review *de novo* the legal issue of whether counsel provided ineffective assistance. *People v. Coleman*, 2015 IL App (4th) 131045, ¶ 66. After an evidentiary hearing where fact-finding and credibility determinations are involved, the circuit court's decision will not be reversed unless it is manifestly erroneous. *People v. English*, 2013 IL 112890, ¶ 23. Manifest error is "clearly evident, plain, and indisputable" (internal quotation marks omitted), and a "decision is manifestly erroneous when the opposite conclusion is clearly evident." *Coleman*, 2013 IL 113307, ¶ 98.

12

¶ 35 To prove ineffective assistance of counsel, the defendant must show that (1) counsel's conduct fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant, and it is reasonably probable that the result would have been different but for counsel's deficient performance. *Strickland*, 466 U.S. at 687. Where the issue involves a plea offer that lapsed or was rejected due to plea counsel's deficient performance, to show prejudice from ineffective assistance of counsel the defendant must demonstrate a reasonable probability that he would have accepted the offer had he received effective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 147 (2012). The defendant also must demonstrate a reasonable probability that the plea would have been entered without the prosecution cancelling the plea or the circuit court rejecting the plea. *Frye*, 566 U.S. at 147. Prejudice is established by demonstrating a reasonable probability that the end result would be a plea to a lesser charge or a shorter sentence. *Frye*, 566 U.S. at 147.

¶ 36 During the third stage evidentiary hearing, both the defendant and McCoy testified that Costa presented the defendant with a plea offer of eight years. This testimony was consistent with the defendant's affidavit attached to his amended postconviction petition. However, neither the defendant nor McCoy testified with any specificity about the terms of the alleged eight-year offer. McCoy was unaware if the charges against the defendant would be amended, and she could not recall a discussion on which count the offer was made. We note that the defendant would not have been able to receive an 8-year sentence in exchange for pleading guilty to count II where the minimum sentence was 12 years. 720 ILCS 570/401(a)(2)(C) (West 2010). McCoy was not shown a written offer and did not know if the defendant was shown a written offer. She additionally believed that the defendant had received a 15-year offer before Costa had presented the defendant with an 8-year offer.

13

¶ 37     The defendant testified that he was unaware of the conversations that Costa had with the State regarding plea offers. The defendant had a conversation with Costa in the hallway at the courthouse where he believed he had accepted an eight-year plea offer. The defendant, however, also testified that, "[Costa] led me to believe something that was never there, I guess. I don't know." The defendant did not testify to which charge(s) he would have pled guilty to in exchange for serving eight years in the Department of Corrections. It was not clear whether an eight-year offer had been made by the State.

¶ 38     Hamrock, the prosecutor on the defendant's case, agreed that for cases of this nature, an eight-year offer could have been made and it would have been possible that he had made an eight-year offer in this case. Hamrock also testified that had he made that offer, he would have honored the agreement. Hamrock, however, did not remember making the eight-year plea offer.

¶ 39     The defendant has the burden to show a substantial denial of a constitutional right by a preponderance of the evidence. During a third stage postconviction hearing, the circuit court is "able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a position of advantage in a search for the truth which is infinitely superior to that of a tribunal where the sole guide is the printed record." (Internal quotation marks omitted.) *People v. Coleman*, 183 Ill. 2d 366, 384 (1998). Based upon the record, the circuit court's determination was not manifestly erroneous, where the circuit court was in the best position to observe and determine the credibility of the witnesses. The circuit court considered the evidence and determined that the defendant and McCoy's testimonies lacked credibility, and Hamrock could not remember making an offer of eight years. We are unable to conclude that the court erred by denying the defendant's petition where the court was in the best position to assesses the credibility of the witnesses.

14

¶ 40    The defendant has failed to show that, but for plea counsel's deficient performance, it was reasonably probable that the result would have been different. The standard for ineffective assistance under *Strickland* has not been satisfied. We, therefore, affirm the ruling by the circuit court.

¶ 41                                    III. CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of Jackson County.

¶ 43    Affirmed.

¶ 44    JUSTICE BARBERIS, specially concurring:

¶ 45    I agree with the majority's overall conclusion affirming this matter where the trial court was in the best position to assess the credibility of the witnesses. I write separately, however, to clarify that waiver applies to defendant's claim pursuant to recent changes in the law set forth in *People v. Jones*, 2021 IL 126432, and *People v. Sophanavong*, 2020 IL 124337. In its brief to this court, the State points to *Jones*, 2021 IL 126432, ¶ 20, for the proposition that " '[i]t is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*.' " (Emphasis added.) *Sophanavong*, 2020 IL 124337, ¶ 33 (quoting *People v. Townsell*, 209 Ill. 2d 543, 545 (2004)). "[P]lea agreements are contracts, and principles of waiver apply equally to them." *Jones*, 2021 IL 126432, ¶ 21 (citing *People v. Absher*, 242 Ill. 2d 77, 87 (2011)). Based on this recent precedent, I find defendant's claim waived.

¶ 46    Here, defendant voluntarily entered into a negotiated plea agreement in exchange for the dismissal of additional charges against him. Defendant failed to file a motion to withdraw a guilty plea—rather, he filed a *pro se* motion to reduce sentence wherein defendant argued that he "was under the influence of drugs and alcohol when [he] was arrested for this case" and as such "was not in [his] right mind when [he] plead out for [his] sentence." He also argued that he

15

"misunderstood and was told [he] could get good time from [his] lawyer." Defendant did not claim that his plea counsel failed to accept an eight-year offer from the State. Rather, defendant argued that he believed he was eligible for good time credit. Succinctly stated, defendant failed to raise an issue regarding the alleged eight-year offer in his motion to reduce sentence. See *Sophanavong*, 2020 IL 124337, ¶ 22 ("Moreover, '[u]pon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived.' " (quoting Ill. S. Ct. R. 604(d) (eff. July 1, 2017))); see also *People v. Evans*, 174 Ill. 2d 320, 329 (1996) ("Any issue not raised in the motion to reconsider or to withdraw the plea shall be deemed waived.").

¶ 47    In my view, this case presents precisely the type of collateral claim our Illinois Supreme Court intends to decline to extend collateral relief, where a defendant knowingly entered into a negotiated plea and failed to raise the issue in either a motion to reconsider or to withdraw the plea. Thus, I would conclude that defendant's knowing and voluntary guilty plea waived any constitutional challenge, as envisioned in recent Illinois Supreme Court precedent set forth in *Sophanavong*, 2020 IL 124337, ¶ 33, and *Jones*, 2021 IL 126432, ¶ 21.

¶ 48    When a defendant fails to timely raise an issue, over time, evidence is lost and memories fade. See *Sophanavong*, 2020 IL 124337, ¶ 23 ("Along with allowing the circuit court to immediately correct any errors that may have led to the guilty plea or the length of the sentence, Rule 604(d) 'ensures that fact finding takes place and a record is made at a time when witnesses are still available and memories are fresh. If the motion to withdraw the plea is denied, that decision can be considered on review. If the motion is granted, the need for an appeal has been eliminated.' " (quoting *Evans*, 174 Ill. 2d at 329)). In this case, defendant entered into a negotiated guilty plea on December 17, 2012. Now, approximately 10 years later, defendant claims that he

16

was denied the effective assistance of counsel. Our own United States Supreme Court stressed "the importance for constitutional purposes of good or bad faith on the part of the Government when the claim is based on loss of evidence attributable to the Government." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). Defendant seemingly does not allege that the State or plea counsel acted in bad faith, nor does the majority contend that the State acted in bad faith or with ill intent in losing the file. Rather, in my view, defendant failed to timely raise this issue, and as such, witnesses and attorneys moved on from this matter. Defendant should be held to the benefit of his bargain.

¶ 49　　Therefore, I agree with the majority's decision to affirm. However, I would affirm the trial court's denial of defendant's third-stage postconviction petition, where defendant's claim is waived. For these reasons, I respectfully specially concur in the majority's decision.

17